UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARINKA STOIMENOVA, et al.,

    Plaintiffs,

v.

SELECT PORTFOLIO SERVICING, et al.,

    Defendants.

Case No. 5:15-cv-01504-RMW

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 17

Plaintiffs Darinka Stoimenova and Bogdan Stoimenova assert three claims against defendants Select Portfolio Servicing, Inc., ("SPS") and HSBC Bank USA, National Association, as Trustee, on Behalf of the Holders of the Luminent Mortgage Loan Trust 2006-2 Mortgage Loan Pass-Through Certificates, Series 2006-2 ("HSBC") (collectively, "defendants") in plaintiffs' First Amended Complaint: (1) a RESPA violation under 12 U.S.C. § 2605 relating to a qualified written request; (2) negligence; and (3) an Equal Credit Opportunity Act violation under 15 U.S.C. § 1691(d)(1) relating to a loan modification application. Defendants move to dismiss the First Amended Complaint in its entirety. Dkt. No. 17. For the reasons explained below, the court grants in part and denies in part the motion to dismiss.

## I. BACKGROUND

This case relates to a defaulted mortgage secured by property located at 1320 Eleanor Way,

Sunnyvale, CA 94087 (the "Property"). Plaintiff Bogdan is a party to the mortgage, and Darinka is not.

On April 1, 2013, plaintiff Darinka filed a complaint against defendants SPS and HSBC. Dkt. No. 1. Defendants then moved to dismiss the complaint for lack of standing, as Darinka sued in her name only, and the mortgage is question was in Bogdan's name. Dkt. No. 8. Darinka and Bodgan then jointly filed a First Amended Complaint ("FAC"), alleging the same claims. Dkt. No. 13. Defendants now move to the dismiss the FAC.

The FAC alleges that Bogdan purchased the Property in 2001, and refinanced the mortgage loan on the Property in 2005. FAC ¶¶ 9-10. In 2007, Bogdan's mother became ill, and Bogdan moved to Bulgaria to care for her. *Id.* ¶ 11. Bogdan executed a power of attorney designating Darinka as his attorney in fact. *Id.* ¶ 12. Bodgan also recorded an Interspousal Transfer Deed, granting the Property to Darinka as her sole and separate property. *Id.* ¶ 13.

On June 17, 2013 Darinka filed a voluntary Chapter 13 bankruptcy. Bkr. Case No. 13-53267 (N.D. Cal.). Defendants filed a Proof of Claim in Darinka's case, listing Darinka as the debtor on Bogdan's mortgage. *Id.* ¶ 14; Dkt. No. 18-1 (Pl. RJN).[1]

During the pendency of the bankruptcy case, plaintiffs submitted a loan modification application. *Id.* ¶ 15. Plaintiffs allege that they submitted a complete loan modification agreement in May 2014. *Id.*

Also in connection with the bankruptcy, Darinka and HSBC entered into an Adequate Protection Stipulation ("APS"), wherein Darinka agreed to submit monthly payments of $2,152.00 to SPS. FAC ¶ 15. The Bankruptcy Court entered the APS on August 11, 2014. The APS provides in pertinent part:

> 1. This Order affects the real property commonly known as: 1320 Eleanor Way, Sunnyvale, CA 94087-5837.
>
> 2. Commencing 8/11/2014, Debtor shall make monthly payments in the amount of $2,152.00 to Select Portfolio, and continuing on the

---

[1] Although defendants listed Darinka as a borrower, neither party alleges that Darinka has any legally binding obligation under the mortgage.

2
5:15-cv-01504-RMW
ORDER ON MOTION TO DISMISS FAC

> first day of each month thereafter until a determination on the loan modification application is made.
>
> . . .
>
> 4. Debtor shall provide Select Portfolio Servicing, Inc., the following information in order to complete their loan modification application: [listing documentation].
>
> . . .
>
> 6. In the event Debtor(s) fails to timely perform any of the obligations set forth in this Order, Select Portfolio shall notify Debtor and Debtor's counsel of the default in writing.
>
> 7. If Debtor(s) fails to cure the default, Select Portfolio may lodge a Declaration of Default and Order Terminating the Automatic Stay. Upon entry of the Order, the automatic stay shall be terminated and extinguished for purposes of allowing Select Portfolio to notice, proceed with and hold a trustee's sale of the subject property, pursuant to applicable state law, without further Court Order or proceeding being necessary.

Dkt. No. 17-1 (Def. RJN) at 40-41.

Darinka began making the APS payments in July 2014. FAC ¶ 16. On September 19, 2014, the Bankruptcy Court gave Darinka until November 20, 2014 to confirm a Chapter 13 Plan, or her bankruptcy case would be dismissed. *Id.* ¶ 17. Darinka alleges that she "worked diligently to receive a timely determination on the loan modification application," but defendants improperly required her to resubmit documentation multiple times and "dragged out the modification process." FAC ¶ 18. Consequently, Darinka's bankruptcy was dismissed for failure to confirm a Chapter 13 Plan. *Id.* ¶ 19. Eventually, on January 15, 2015, defendants finally denied plaintiffs loan modification application. *Id.* ¶ 23.

On January 21, 2015 plaintiffs sent a Qualified Written Request ("QWR") to SPS, inquiring as to how the APS payments were applied to the mortgage. *Id.* ¶ 25. Plaintiffs have not received a response. *Id.* ¶ 28.

On March 13, 2015, defendant recorded a Notice of Trustee's Sale. *Id.* ¶ 29.

Plaintiffs assets three claims: (1) a violation of 12 U.S.C. § 2605(e)(1)(B), related to QWRs; (2) negligence in handling plaintiffs' loan modification application and in misapplying the APS payments; and (3) a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d), for taking more than 30 days to notify plaintiffs of the determination of their loan modification agreement.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (internal citation omitted).

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)) (alterations in original).

### III. ANALYSIS

#### A. The Allegations in Plaintiffs' FAC

Defendants' primary argument underlying the motion to dismiss is that plaintiffs' allegations in the FAC are false, in that Bogdan is not really a party to this action and Darinka has been acting by herself in attempting to take on Bogdan's loan and get a loan modification. Defendants assert that Darinka admitted as much by filing the original complaint in her name only. However, the court must accept as true all of the factual allegations contained in the complaint. *Iqbal,* 556 U.S. at 678. Defendants have not come forward with any judicially noticeable documents contradicting plaintiffs' FAC.

In addition, the court notes that under Federal Rule of Civil Procedure 11, an attorney or unrepresented party ordinarily is deemed to be representing, under penalty of Rule 11 sanctions, that "the factual contentions have evidentiary support." "Rule 11 imposes a duty on attorneys to certify by their signature[5] that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 174 (C.D. Cal. 2002) (quoting *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994)). The court assumes that plaintiffs' filings comply with Rule 11.

At this point, there is no reason to conclude that the allegations in the FAC are false, as they are not "contradict[ed by] matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.,* 536 F.3d at 1055.

#### B. RESPA QWR Claim

Plaintiffs allege that they mailed a QWR to SPS on January 21, 2015, but never received a response. FAC ¶ 25.

Under the Real Estate Settlement Procedures Act ("RESPA"), the "servicer of a federally related mortgage loan" must acknowledge receipt of a QWR from a "borrower" within twenty days and must respond substantively to the QWR within sixty days. 12 U.S.C. § 2605(e)(1)(A),

(e)(2). Section 2605(f) (1)(A) of RESPA requires a plaintiff to allege that actual damages flowed from the alleged violation.

Defendants move to dismiss the RESPA claim on the basis that (1) Darinka is not a borrower; (2) Bodgan never submitted a QWR; (3) the letter did not qualify as a QWR because it related to the APS payments; and (4) neither plaintiff has plead any harm from the failure to respond to the QWR.

As to the first two arguments, Darinka's claim must be dismissed because she is not a "borrower." 12 U.S.C. § 2605(e). However, the FAC alleges that Bodgan submitted the QWR, and therefore the court will not dismiss his claim on that basis.

The FAC also alleges that the letter sent to SPS was a QWR. The letter asked how payments were being applied to the mortgage. Bodgan pleads that the inquiry sent to SPS qualified as a QWR in that it alleged "misapplication of payments and requesting information, including but not limited to, payment history and balance in any suspense account and the reason why such funds were deposited in said account." FAC ¶ 36; *see also* 12 U.S.C. § 2605(e)(1)(B) (requirements for a QWR).

Nonetheless, Bogdan's allegation of actual damage is insufficient. Bogdan alleges harm in that "Defendant SPS violated 12 U.S.C. § 2605(e)(3) by continuing to report Plaintiffs late to credit reporting agencies during the 60 day period beginning on January 26, 2015." FAC ¶ 39. Merely alleging a negative credit report is not sufficient. *See, e.g., Petrovich v. Ocwen Loan Servicing, LLC*, 2015 WL 3561821, at *2 (N.D. Cal. June 8, 2015) ("a reduction in credit rating is not sufficient damage to support a RESPA claim"); *Anokhin v. BAC Home Loan Servicing, LP*, 2010 WL 3294367, at *3 (E.D. Cal. Aug. 20, 2010) ("Plaintiff's conclusory statement that she suffered negative credit ratings does not itself establish actual [RESPA] damages."). Bogdan must allege that he suffered actual pecuniary harm from the negative reporting.

Accordingly, the court DISMISSES Darinka's RESPA claim WITH PREJUDICE and DISMISSES Bodgan's RESPA claim WITHOUT PREJUDICE. If Bodgan can allege harm resulting from the alleged RESPA violation, consistent with Rule 11, he may do so.

### C. Negligence Claim

Plaintiffs allege that defendants negligently handled their May 2014 loan modification application and negligently misapplied Darinka's payments under the APS. FAC ¶¶ 43, 49. Defendants move to dismiss on the basis that (1) they have no duty to plaintiffs with regard to the loan modification and (2) claims based on performance of the APS must be brought in contract, not tort.

Defendants argue that financial institutions have no duty to a borrower on a loan or to a loan applicant. To prove a cause of action for negligence, plaintiff must show "(1) a legal duty to use reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278, (2004). Under California law, lenders generally do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *See Nymark v. Heart Fed. Savings & Loan Ass'n,* 231 Cal. App. 3d 1089, 1095–96 (1991) (citations omitted). To determine "whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Id.* at 1098 (quotation marks and citations omitted).[2] "[C]ourts are divided on the question of when lenders owe a duty of care to borrowers in the context of the submission of and negotiations related to loan modification applications and foreclosure proceedings." *Rowland v. JPMorgan Chase Bank, N.A.*, No. 14-CV-00036 LB, 2014 WL 992005, at *8 (N.D. Cal. Mar. 12, 2014) (collecting cases); *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. 13-CV-05881 LB, 2014 WL 8900016, at *14–17 (N.D. Cal. Mar. 3, 2014).

---

[2] Some cases refer to these as the "*Biakanja* factors."

7
5:15-cv-01504-RMW
ORDER ON MOTION TO DISMISS FAC

1       Here, for the purposes of the motion to dismiss, the *Nymark* factors support finding a duty
2  of care to plaintiffs. *See Rowland*, 2014 WL 99205; *Rijhwani*, 2014 WL 8900016; *Garcia v.
3  Ocwen Loan Servicing, LLC*, No. 10-CV-0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010)
4  (finding that a servicer had a duty of care to a borrower under the *Nymark* factors). First, the loan
5  modification was intended to help plaintiffs avoid loss of Darinka's home and assist Darinka in
6  formulating a Chapter 13 plan. Second, SPS was aware of the potential harm to Darinka given
7  SPS's involvement in the bankruptcy proceeding and the APS agreement. Third, Darinka likely
8  suffered injury in being unable to create a workable Chapter 13 plan. The fourth and fifth factors,
9  however, weigh in favor of defendants. It appears that a loan modification may not have saved
10 Darinka's bankruptcy case. *See* Dkt. No. 17-1 at 46-47 (Declaration of Debtor's Attorney). And,
11 some blame for the failed application may fall on Darinka for failing to make timely responses to
12 the bankruptcy court and SPS. Dkt. No. 17-1 at 40 ¶ 4 (provision of the APS requiring Darinka to
13 provide several documents for SPS to process her application). The sixth factor weighs in
14 plaintiffs' favor, as the ECOA evidences a policy in favor of prompt resolution of loan
15 applications.[3] Accordingly, as four of the six factors weigh in plaintiffs' favor, for the purposes of
16 the motion to dismiss, the *Nymark* factors support finding a duty of care to plaintiffs.[4]

17      As to a negligence claim based on the APS payments, the court agrees that plaintiffs must
18 pursue claims arising out of performance of the APS agreement in contract. "[C]onduct
19 amounting to a breach of contract becomes tortious only when it also violates a duty independent
20 of the contract arising from principles of tort law. . . An omission to perform a contract obligation
21 is never a tort, unless that omission is also an omission of a legal duty." *Erlich v. Menezes*, 21
22 Cal. 4th 543, 551 (1999) (citation omitted). "If every negligent breach of a contract gives rise to
23 tort damages the limitation would be meaningless, as would the statutory distinction between tort

---

[3] This analysis applies to both plaintiffs, as both plaintiffs allegedly submitted the loan modification application.
[4] Defendants argument that plaintiffs have failed to plead causation and damages go to the weight of the evidence, and not the sufficiency of the allegations. Plaintiffs have plausibly alleged that had SPS acted promptly on the loan modification, the bankruptcy would have resolved in their favor.

and contract remedies." *Id.* at 554.  Plaintiffs have alleged that by misapplying the APS payments, SPS breached a duty owed to plaintiffs.[5]  A failure to apply the APS payments under the terms of the APS agreement would be a breach of contract, and not a breach of an independent duty owed to Darinka.  Accordingly, plaintiffs must pursue a contract claim to recover for an alleged misapplication of funds under the APS agreement.

The court therefore DENIES the motion to dismiss the negligence claim premised on the mishandling of the May 2014 loan application as to both plaintiffs.

### D. Equal Credit Opportunity Act Claim

Plaintiffs allege that defendants violated the ECOA by failing to timely respond to plaintiffs' May 2014 loan modification request.  FAC ¶ 56; 15 U.S.C. § 1691(d)(1) ("Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.").

Defendants to move to dismiss the ECOA claim on the basis that (1) Darinka lacks standing as she is not a borrower under the mortgage; (2) Bogdan lacks standing because he is not an owner-occupant of the Property; and (3) a "complete application" was never submitted.

Both Darinka and Bogdan have standing to pursue the ECOA claim, as both parties made the loan modification request.  As to defendant's second argument, there does not appear to be any requirement in the ECOA that a borrower continually occupy the property.  Defendants cite California Civil Code § 2924.15, which limits the application of certain California statues "only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units."  To the extent that Section 2924.15 would be a basis for denying Bogdan's loan modification application, the ECOA still requires defendants to promptly inform Bogdan of that fact.  Section 2924.15 does not appear to limit application of the ECOA.  Finally, plaintiffs affirmatively plead that they submitted a complete application in May

---

[5] At the hearing on the motion to dismiss, both parties represented to the court that further discovery would be necessary to determine what happened to the APS payments.

2014, but defendants "dragged out the modification process by requesting Plaintiffs to resubmit documents which they had already submitted." FAC ¶¶ 18, 45.

Accordingly, the court DENIES the motion to dismiss the ECOA claim.

### IV. ORDER

For the reasons explained above, the RESPA claim is dismissed WITH PREJUDICE as to Darinka and WITHOUT PREJUDICE as to Bogdan; the motion to dismiss is denied as to the negligence and ECOA claims. Plaintiff may file an amended complaint with 21 days of this order.

The court previously entered the parties' stipulation regarding mediation. The parties are to participate in mediation by October 22, 2015 (90 days from the date of entry of the parties' stipulation).

**IT IS SO ORDERED.**

Dated: August 14, 2015

_____
Ronald M. Whyte
United States District Judge